Anita **HENDERSON**, Plaintiff,

v.

**WHIRLPOOL CORPORATION,** Defendant.

No. 97–C–1052–H.

United States District Court, N.D. Oklahoma.

Aug. 13, 1998.

Thomas Lynn Bright, Tulsa, OK, for Plaintiff.

Mary L Lohrke, Kimberly Lambert Love, Boone, Smith, Davis, Hurst & Dickman, Tulsa, OK, for Defendant.

1. The Court previously granted Whirlpool's motion to dismiss Plaintiff's claim for discharge in violation of Oklahoma public policy. Further, in her response to Whirlpool's motion for summary judgment and at the hearing in this matter,

## ORDER

HOLMES, District Judge.

This matter comes before the Court on a motion for summary judgment (Docket # 21) by Defendant Whirlpool Corporation ("Whirlpool").

Plaintiff has alleged the following claims against Whirlpool: (1) sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.;* (2) wrongful discharge in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.;* and (3) intentional infliction of emotional distress.[1] Defendant has moved for summary judgment on all of these claims. A hearing was held in this matter on August 6, 1998.

### I

For purposes of this motion, the Court accepts as true the following facts agreed to by the parties:

1. Whirlpool has in place a written policy prohibiting any form of harassment or abusive conduct directed at employees because of their race, color, sex, religion, national origin, age, or other legally protected status.

2. Whirlpool's policy provides that any employee who feels subjected to harassing behavior should immediately report it to any Business Team Trainer, Staff Member, or Human Resources Representative.

3. During the first two weeks of employment, Whirlpool employees receive training in the areas of safety, human resources policy and procedure, quality, teaming skills, benefits, and practical on-the-job experience. Specifically, employees receive training regarding Whirlpool's policies against harassment and discrimination in the workplace.

4. Whirlpool's written sexual harassment complaint procedure indicates that re-

Plaintiff did not contest Whirlpool's motion for summary judgment on Plaintiff's Title VII retaliation claim. Accordingly, Whirlpool's motion for summary judgment as to this claim has been confessed and is hereby granted.

ports of discrimination and/or harassing conduct are investigated.

5. Whirlpool maintains a 12 credit attendance policy. If an employee uses all 12 credits, that employee is terminated for excessive absenteeism.

6. Whirlpool has a written attendance policy. Whirlpool also issued written materials that contain hypothetical scenarios explaining that FMLA leave is not counted as an absence under the attendance policy.

7. Plaintiff began her employment with Whirlpool on June 3, 1996 as a technician assigned to the door team on the electric non-pyro line. Plaintiff was transferred to the position of auditor at the beginning of May 1997.

8. Plaintiff signed an Acknowledgment of Receipt on June 4, 1996 acknowledging her receipt of the Human Resources Guide that sets forth Whirlpool's policies.

9. Plaintiff complains of two instances of inappropriate touching by her co-worker, Henry Johnson. Specifically, Plaintiff claims that on May 14, 1997, Mr. Johnson passed a drawer underneath Plaintiff's arm and touched her breast. In addition, Plaintiff claims that on May 15, 1997, Mr. Johnson "came up behind her and grabbed her beneath her breasts in the high rib area" and held her for several seconds.

10. Plaintiff further claims that Mr. Johnson assaulted her when he "had his hands up and out at [her] with his back hunched over" as they approached each other in a hallway.

11. Plaintiff also complains that Mr. Johnson told her a joke she found offensive, which the parties refer to as the "lesbian joke," and that he had made offensive remarks to another female employee.

12. Plaintiff reported the incidents to Whirlpool management officials. Management officials in the Whirlpool Human Resources Department immediately met with Mr. Johnson, who denied the inappropriate touching. Both parties reported that there were no witnesses who could corroborate their story. There had been no prior complaints concerning Mr. Johnson.

13. Management officials counseled Mr. Johnson regarding Whirlpool's sexual harassment policy and directed Mr. Johnson to leave Plaintiff alone. Plaintiff was informed of management's discussion with Mr. Johnson and was told that if there were any further incidents Plaintiff should immediately advise management.

14. After being informed of the decision, Plaintiff demanded that either she or Mr. Johnson be transferred. Whirlpool refused to transfer either employee.

15. After the investigation, Mr. Johnson did not attempt to touch her, and only spoke to Plaintiff on one occasion to respond to a business-related question. Also following the investigation, Plaintiff's supervisor, on at least one occasion, asked Plaintiff how things were going between Plaintiff and Mr. Johnson. Plaintiff told her supervisor that everything was fine and made no further complaints to any member of management.

16. Following the complaint to management, Plaintiff's salary and benefits remained the same.

17. Plaintiff was terminated on August 18, 1997. Whirlpool told Plaintiff that she was being fired for excessive absenteeism in accordance with the attendance policy.

18. Plaintiff took a medical leave of absence from March 31, 997 through April 22, 1997. Plaintiff took a second medical leave of absence in July 1997.

Whirlpool has moved for summary judgment based on the above undisputed facts.

## II

Summary judgment is appropriate where "there is no genuine issue as to any material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and "the moving party is entitled to judg-

**1242**

ment as a matter of law," Fed.R.Civ.P. 56(c). In *Celotex*, the Supreme Court stated:

> [t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322, 106 S.Ct. 2548.

A party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, of specific facts, Fed.R.Civ.P. 56(e), sufficient to raise a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

Summary judgment is only appropriate if "there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 250, 106 S.Ct. 2505. The Supreme Court stated:

> [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. 2505. Thus, to defeat a summary judgment motion, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505

("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citations omitted)).

In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

### III

Defendant has first moved for summary judgment on Plaintiff's claim of sexual harassment in violation of Title VII of the Civil Rights Act of 1964. Section 703(a) of Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C. § 2000e–2(a)(1). Defendant has moved for summary judgment, claiming that the alleged conduct does not rise to a level that is severe or pervasive and that Defendant is not liable for any alleged sexual harassment because it took reasonable measures to remedy any harassment.

### A

The prohibition against discrimination because of sex prohibits sexual harassment based upon a "hostile work environment."[2] *Meritor Savings Bank, FSB v.*

**2.** Recently, the United States Supreme Court eliminated in large part the substantive distinction between "quid pro quo" sexual harassment claims and sexual harassment claims based upon a "hostile work environment." The Supreme Court stated that the distinction might be relevant to the initial question of whether a plaintiff can prove discrimination in violation of Title VII. "When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII. For any sexual harassment preceding the employment decision to be actionable, however, the conduct must be severe or pervasive." *Burlington Indus., Inc. v. Ellerth*, ––– U.S. –––, –––, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998). Accordingly, although the Court may characterize Plaintiff's claim as one based upon a hostile work environment, this characterization is meaningful only to the extent that Plaintiff must demonstrate that the alleged sexually harassing conduct was severe or pervasive.

*Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Sexual harassment occurs where the "conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Id.* The conduct must further "be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* at 67, 106 S.Ct. 2399 (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir.1982)).

To be actionable under Title VII, the sexually objectionable environment must be both objectively and subjectively perceived as hostile or abusive, based on the totality of the circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In making this determination, courts must consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367. The Supreme Court has also recently explained that Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex," *Oncale v. Sundowner Offshore Serv., Inc.*, —— U.S. ——, ——, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998), and that Title VII must not become a "general civility code." *Id.* at 1002.

Whirlpool claims that the alleged conduct is not severe or pervasive since a reasonable person would not find that Mr. Johnson's actions created a hostile work environment. Specifically, Whirlpool states that Plaintiff can present no evidence that the first touching incident was any more than an accidental touching of Plaintiff's breast. As to the second touching incident, Plaintiff can present no evidence that the touching was anything more than nonsexual horseplay. Whirlpool also alleges that offensive jokes told to Plaintiff's coworkers outside of her presence can-

not contribute to creating a hostile work environment.

In contrast, Plaintiff claims that a hostile work environment was created by the two incidents of touching, the assault in the hallway, and the offensive joke. Plaintiff also alleges that after she complained to management, Mr. Johnson "constantly glared and stared" at Plaintiff and that other coworkers "shunned and rumor mongered" about Plaintiff. Pl.'s Resp. at 21. Plaintiff asserts that her work performance was affected by this conduct and that she was embarrassed and humiliated by Mr. Johnson's allegedly abusive behavior. Moreover, she claims that other sexual jokes that Mr. Johnson told in the workplace contributed to the sexually harassing environment.

The Court finds that there are disputed issues of material fact as to whether the alleged conduct was so severe or pervasive as to create a hostile work environment. Although Whirlpool contends that Plaintiff cannot prove that the touching incidents were not accidents or horseplay, a determination as to the nature of the touching, and whether such touching occurred at all, largely depends upon the credibility of Plaintiff and Mr. Johnson, especially since there are no witnesses to either of these two incidents. *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1126 (10th Cir.1993) (stating that determining whether conduct is unwelcome "turns largely on credibility determinations committed to the trier of fact") (quoting *Meritor*, 477 U.S. at 68, 106 S.Ct. 2399).

The Court also notes that harassment of other women in the workplace may be considered in evaluating a claim of a sexually harassing work environment. *Hirase–Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 782 (10th Cir.1995). Moreover, "threatening stares" taken as a result of complaints about sexual harassment can also constitute illegal sexual harassment, if the stares are "sufficiently related" to prior sexual harassment. *Id.* at 784 n. 3.[3] Thus, considering Plaintiff's allegations of touching, stares, offensive jokes, and harassment of other wom-

---

3. The Court notes that "stares" directed at an employee who has reported instances of sexual harassment might, in certain circumstances, also be conduct sufficient to form the basis of a retaliation claim.

en in the workplace, the Court concludes that there is a reasonable basis upon which a finder of fact could find that Plaintiff was subjected to a hostile work environment. Accordingly, Defendant's motion for summary judgment on this basis is hereby denied.

## B

▮ Employers may be liable on a claim of sexual harassment by a coworker for "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Hirschfeld v. New Mexico Corrections Dep't*, 916 F.2d 572, 577 (10th Cir.1990); *see also* 29 C.F.R. § 1604.11(d) (stating that "[w]ith respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action."). In this situation, "courts must make two inquiries: first, into the employer's actual or constructive knowledge of the harassment, and second, into the adequacy of the employer's remedial and preventive responses to any actually or constructively known harassment." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998).[4]

1

▮ In determining the first question of an employer's actual knowledge, the reporting of harassment to management-level employees is sufficient. *Id.* Further, if a plaintiff points to specific facts which would indicate that harassment by coworkers is widely pervasive, such facts could support an inference of constructive knowledge by the employer. *Id.* at 675.

Whirlpool does not dispute that Plaintiff complained to management officials about the two touching incidents, the alleged "assault" incident in the hallway, and the offensive joke. In turn. Plaintiff does not dispute that she did not notify management of any alleged threatening stares and "rumors" by other coworkers, but contends that she did not notify management of these actions because she had no confidence in management after their earlier disciplinary actions toward Mr. Johnson.

The Court finds that Whirlpool had actual knowledge of the conduct that Plaintiff reported to management. The Court does not find, however, that Whirlpool had constructive knowledge of any "rumors" or "stares." There is no evidence in the record that the alleged conduct Plaintiff did not report to management was so pervasive as to render Whirlpool culpable for failing to discover it. Accordingly, the Court proceeds to analyze Whirlpool's response based upon the incidents of which Whirlpool had actual knowledge.

---

**4.** In a supplemental brief, Plaintiff argues that the standards for employer liability recently enunciated by the Supreme Court in *Burlington Indus.* and *Faragher v. City of Boca Raton*, ⸺ U.S. ⸺, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) apply in the instant case. In those cases, the Supreme Court held that employers are vicariously liable for sexual harassment "by a supervisor" when a tangible employment action, such as discharge, demotion, or undesirable reassignment, is taken. When no tangible employment action is taken, employers may raise an affirmative defense consisting of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, ⸺ U.S. at ⸺, 118 S.Ct. at

2293; *Burlington Indus.*, ⸺ U.S. at ⸺, 118 S.Ct. at 2270.

The Court finds that the standard for employer liability enunciated in *Faragher* and *Burlington Indus.* is inapplicable to the instant case since the alleged sexual harassment is by a coworker. In articulating the standard, the Supreme Court specifically stated that this standard is for a hostile environment created "by a supervisor." Further, both cases recognized the reasons for not holding an employer vicariously liable for the actions of a coworker to the same extent as for a supervisor. *Faragher*, ⸺ U.S. at ⸺–⸺, 118 S.Ct. at 2291–92; *Burlington Indus.*, ⸺ U.S. at ⸺, 118 S.Ct. at 2269. Accordingly, the Court will continue to apply the standards previously discussed when the sexual harassment is perpetrated by a coworker, rather than by a supervisor.

2

In addressing the second question for employer liability, whether the employer's response was adequate, the Tenth Circuit has held that courts must ask "whether the remedial and preventative action was 'reasonably calculated to end the harassment.'" *Adler*, 144 F.3d at 676 (quoting *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir.1991)). In answering this question, the Tenth Circuit recently stated the following:

A stoppage of harassment shows effectiveness, which in turn evidences such reasonable calculation. However, this is not the sole factor to be considered. Because there is no strict liability and an employer must only respond reasonably, a response may be so calculated even though the perpetrator might persist.

In cases where effectiveness is not readily evidenced by a stoppage, we consider the timeliness of the plaintiff's complaint, whether the employer unduly delayed, and whether the response was proportional to the seriousness and frequency of the harassment. Courts have explained that simply indicating to a perpetrator the existence of a policy against harassment is usually insufficient. By way of example, responses that have been held reasonable have often included prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral or written warnings to refrain from harassing conduct, reprimands, and warnings that future misconduct could result in progressive discipline, including suspension and termination.

The employer is, of course, obliged to respond to any repeat conduct; and whether the next employer response is reasonable may very well depend upon whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before, will be effective. Repeat conduct may show the unreasonableness of prior responses. On the other hand, an employer is not liable, although a perpetrator persists, so long as each response was reasonable. It follows that an employer is not required to terminate a perpetrator except where termination is the only response that would be reasonably calculated to the end the harassment.

Unfortunately, some harassers may simply never change. Just as unfortunate, a victim may have to suffer repeated harassment while an employer progressively disciplines the perpetrator to determine whether he or she is just such a "hard head" case. It is some consolation for the victim that, to be reasonable, responses must progress more rapidly in proportion to more serious and frequent harassment. The courts, however, must balance the victim's rights, the employer's rights, and the alleged harasser's rights. If our rule were to call for excessive discipline, employers would inevitably face claims from the other direction of violations of due process rights and wrongful termination.

*Adler*, 144 F.3d at 676–77 (citations omitted). Further, the Court notes that the reasonableness of an employer's response may be measured by whether other potential harassers are deterred. In this regard, however, the Tenth Circuit requires that there be a nexus between an employer response and subsequent harassment by others. Without this nexus, the later harassment is irrelevant as to whether the employer's response in the first instance was reasonable. *Id.* at 678.

Whirlpool contends that its response to Plaintiff's complaint was reasonable since Mr. Johnson was counseled regarding Whirlpool's sexual harassment policy and was directed to leave Plaintiff alone. Whirlpool further contends that its response was adequate since Plaintiff's contact with Mr. Johnson was minimized, Plaintiff did not make any further complaints regarding Mr. Johnson, and Plaintiff's supervisor followed up by asking Plaintiff whether she was having any further problems with Mr. Johnson. Whirlpool also contends that its investigation in the matter was reasonable since Plaintiff did not indicate that there were any witnesses to the alleged misconduct.

Plaintiff asserts that Whirlpool's response was not adequate since Whirlpool refused to transfer either Plaintiff or Mr. Johnson from the department and Whirlpool management did not ask other team members about the allegations of misconduct. Plaintiff further

**1246**

asserts that Whirlpool's response was inadequate since it failed "to eliminate [all the] vestiges of the discriminatory environment" by failing to discipline Mr. Johnson and for its failure to make Plaintiff whole by offering her psychotherapy or time off to recover. Pl.'s Resp. at 27.

The Court finds that, as a matter of law, Whirlpool's response to Plaintiff's complaint was adequate and reasonable. Whirlpool counseled Mr. Johnson on Whirlpool's sexual harassment policy and directed Mr. Johnson to leave Plaintiff alone. Whirlpool pursued the situation by later asking Plaintiff about the relationship between her and Mr. Johnson. Plaintiff also agrees that contact between the two was minimized and that communication with Mr. Johnson effectively ceased. Without evidence of additional harassment or more severe or frequent misconduct, Whirlpool was not required to terminate or transfer Mr. Johnson or Plaintiff immediately.

Although Plaintiff asserts that there occurred stares by Mr. Johnson and harassment by other coworkers, Plaintiff did not complain to management about this alleged conduct. In this regard, as in *Adler*, Plaintiff has not presented evidence of a nexus between Whirlpool's earlier response and the later actions by others that would question the adequacy of Whirlpool's initial reaction. Thus, without subsequent notification of misconduct by Plaintiff and without evidence of a nexus between Whirlpool's response and any continued harassment, the alleged stares and rumors do not render Whirlpool's response infirm.

The Court also finds that Whirlpool's investigation into the matter, although not dispositive as to the adequacy of the response, was reasonable. When asked if there were witnesses to the alleged conduct, Plaintiff stated that there were none. Further, since Plaintiff made no further complaints after the initial counseling of Mr. Johnson and since Whirlpool was not aware of further instances of harassment, a full-scale investigation into the conduct of Mr. Johnson was not warranted. Accordingly, the Court finds that Whirlpool's response was proportional and reasonable, considering the nature and frequency of the alleged conduct, and was reasonably calculated to end any harassment.

Defendant's motion for summary judgment on Plaintiff's sexual harassment claim is hereby granted.

### III

Defendant has next moved for summary judgment on Plaintiff's FMLA claim. The FMLA provides a private right of action by employees for violations of the statute. 29 U.S.C. § 2617(a)(2). In order for an "eligible employee" to establish liability by an "employer," as both terms are defined by the FMLA, 29 U.S.C. § 2611(2) & (4), the employee must establish (1) entitlement to leave as defined by 29 U.S.C. § 2612(a)(1), and (2) that such entitlement to leave was interfered with by the employer in violation of 29 U.S.C. § 2615. In response, an employer may assert as affirmative defenses that (1) the plaintiff failed to provide the notice required by the FMLA and the regulations promulgated by the Department of Labor, 29 U.S.C. § 2612(e)(1) (applying to foreseeable leave only); 29 C.F.R. § 825.303 (applying to unforeseeable leave); and/or (2) the plaintiff failed to provide sufficient "certification issued by the health care provider," if and to the extent certification was required by the employer in the particular case, 29 U.S.C. § 2613; 29 C.F.R. §§ 825.305–308.

In the instant case, the parties do not dispute that both Plaintiff and Whirlpool are covered by the FMLA or that Plaintiff's migraine headaches are a serious health condition entitling her to medical leave. 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.114(c). Further, for purposes of this motion, Whirlpool does not dispute that Plaintiff provided appropriate notice of her condition. Instead, Whirlpool argues only that Plaintiff failed to provide proper medical certification of her need for medical leave. Specifically, Whirlpool contends that its attendance policy requires in all cases that an employee submit written medical certification supporting the need for FMLA leave and that Plaintiff failed to meet this requirement. Human Resources Guide § 6.07. Whirlpool further asserts that Plaintiff received and had actual notice of this policy through her receipt of the handbook and that she was terminated in

accordance with this policy due to her failure to comply with this requirement.

Plaintiff responds that she was not required to provide medical certification because an employer is obligated to request medical certification with respect to each instance of FMLA leave, if it desires such certification, and that Whirlpool failed to request certification for each separate absence she took. In support, Plaintiff points to the FMLA regulations which state that "[a]n employer must give notice of a requirement for medical certification each time a certification is required." 29 C.F.R. § 825.305(a).

Plaintiff also argues that Whirlpool waived its medical certification requirement because Rick Jorata told Plaintiff that she did not have to tell him each time she had a migraine. However, the Court rejects Plaintiff's claim that Whirlpool waived its medical certification requirement. Even if such a waiver had occurred, Rick Jorata's comments would have resulted only in a waiver of the notice requirement, and not the medical certification requirement.

Thus, the issue before the Court is whether, as a matter of law, Whirlpool's statement in its employee manual is sufficient to require Plaintiff to provide medical certification in order to receive leave under the FMLA. In short, the issue is whether this statement relieved Whirlpool of its obligation under the law to specifically request a certification each time that Plaintiff sought FMLA leave. There is little authority on this issue. In *Cianci v. Pettibone Corp.*, No. 95–C–4906, 1997 WL 182279 (N.D.Ill. Apr.8, 1997) (unpublished), the court specifically raised this question, but did not resolve it. In *Cianci*, the court noted that the employee handbook indicated that a medical certification was required, but when the employee made her leave request, no one mentioned such a requirement or asked for documentation for the leave. *Id.* at *6. The Court declined to address whether the employee manual requirement was sufficient, however, since it decided the case on other grounds. *Id.*

In *Stubl v. T.A. Sys., Inc.*, 984 F.Supp. 1075 (E.D.Mich.1997), the employer, T.A., argued that the plaintiff, Mr. Stubl, had not provided the proper medical certification for his FMLA leave. When the plaintiff re-

quested leave, the employer attached a copy of its leave policy to the letter requesting leave. The policy stated that medical leave "is granted when sufficient medical evidence is submitted." *Id.* at 1086. The court held that this notice was insufficient because, although informing the plaintiff that the company required medical information, it did not inform Mr. Stubl of his rights under the FMLA. The court stated in part as follows:

Therefore, because Stubl had actual notice of this internal requirement at the time he requested his leave, it could be argued that additional notice would have been redundant and unnecessary.

While this seemingly indicates that Mr. Stubl's leave is not covered because he failed to comply with T.A.'s internal requirement, T.A.'s purported notice was seriously defective. Under the pertinent regulations, the notice from the employer must detail the specific expectations and obligations of the employee and explain any consequences of a failure to meet these obligations, including any requirement for the employee to provide medical certification and the consequences of failure to do so. If a company's notification is conveyed via an employee manual, as in this case, the instrument must clearly incorporate information on FMLA rights and responsibilities and the employer's policies regarding the FMLA.

*Id.* at 1086–87 (citations omitted). Thus, *Stubl* contemplates that an employee manual may provide proper notice of an employer's medical certification requirement if it is given to the employee when leave is requested and if it also satisfies the FMLA requirements in 29 C.F.R. § 825.301 concerning employer notification.

As noted, the FMLA requires that the "employer must give notice of a requirement for medical certification *each time a certification is required*." 29 C.F.R. § 825.305(a) (emphasis added). In *Stubl*, as a matter of practice, the employer attached a copy of its leave policy to each employee's request for leave, which Whirlpool did not do in the instant case. Thus, the question here becomes whether the mere existence of these provisions in the policy manual, without any

particularized act of notification, fulfills Whirlpool's obligation to notify Plaintiff "each time a certification is required."

The Court finds that the existence of the certification requirement in the policy manual, by itself, does not satisfy Whirlpool's obligation to notify Plaintiff when it requires certification. The regulations place the burden of giving the employee information upon the employer and permit the employer, when it so desires, to notify the employee that medical certification is needed. The regulations clearly contemplate that the employer may not need certification for every FMLA absence and any additional requirement for providing notice of absences should be conducted, in the first instance, through "informal means." 29 C.F.R. § 825.303(b).

Whirlpool's wholesale reliance on its employee manual converts the right of the employer to require medical certification into an additional obligation on the employee in order to exercise of his or her rights under the statute. By claiming that a statement in the policy manual is a blanket requirement to provide medical certification each time an absence is taken shifts the burden in this context from the employer to the employee and results in a significant modification of the statute. The effect would be to write into the law a trip to the doctor every time an employee requests medical leave. This result is contrary to the terms of the statute, illogical, and inconsistent with the legislative intent. Therefore, the Court concludes, as a matter of law, that a blanket requirement for medical certification in the policy manual cannot satisfy an employer's obligation to notify an employee that medical certification is requested "each time a certification is required." [5] The law mandates that an employer communicate its desire for medical certification in each instance that it deems it necessary to meet its legal obligation to determine whether the leave sought qualifies under the FMLA. Accordingly, Defendant's motion for summary judgment on Plaintiff's FMLA claim is hereby denied.

## IV

Whirlpool also has moved for summary judgment on Plaintiff's claim for intentional infliction of emotional distress. Under Oklahoma law, recovery for the tort of intentional infliction of emotional distress is strictly limited to circumstances where the acts committed are so extreme or outrageous as to demand redress. As the Oklahoma Supreme Court stated,

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Breeden v. League Services Corp.*, 575 P.2d 1374, 1376 (Okla.1978) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The events giving rise to the complaint must be judged within the context in which the events occurred. *Eddy v. Brown*, 715 P.2d 74, 77 (Okla.1986) (stating that "[t]he salon of Madame Pompadour is not to be likened to the rough-and-tumble atmosphere of the American oil refinery").

Whirlpool claims that Plaintiff has not satisfied the strict requirements for an intentional infliction of emotional distress claim since Whirlpool took reasonable actions in response to Plaintiff's complaints of harassment. Whirlpool further notes that even if Whirlpool violated Title VII or the FMLA, this conduct does not amount to intentional infliction of emotional distress. *See Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1388 n. 9 (10th Cir.1991).

---

5. The Court notes that in the case of a chronic medical condition, the regulations provide that an employer generally may not request recertification of a medical condition more often than every thirty days. 29 C.F.R. § 825.308. By holding that Whirlpool's policy manual does not satisfy its obligation to request medical certification "each time a certification is required," the Court recognizes that "each time" may generally occur only after thirty days.

Plaintiff bases this claim upon the same evidence as her sexual harassment claim. Although citing a law review article indicating that sexual harassment can have harmful effects on workers, Plaintiff fails to indicate how Plaintiff suffered those effects and how Whirlpool's actions constitute extreme or outrageous conduct, considering in particular the adequacy of Whirlpool's response to the alleged harassment. The Court finds that Defendant's actions alleged here does not rise to the level of extreme or outrageous conduct. *See McClain v. Southwest Steel Co.*, 940 F.Supp. 295, 300 (N.D.Okla.1996); *Eddy*, 715 P.2d at 77.[6] Accordingly, Defendant's motion for summary judgment on this claim is hereby granted.

## V

For the reasons set forth above, Defendant Whirlpool's motion for summary judgment (Docket # 21) is hereby granted in part and denied in part.

IT IS SO ORDERED.

---

6. Plaintiff also argues that Whirlpool can be held liable for the actions of Mr. Johnson since it has "ratified" Mr. Johnson's actions by failing to conduct a proper investigation of the sexual harassment claim. Assuming, *arguendo*, that Whirlpool, as Defendant, could be held liable for the acts of an employee, the Court still finds that Mr. Johnson's actions would not rise to the level sufficient to maintain a claim for intentional infliction of emotional distress under Oklahoma law.