Connie DUNEGAN, Plaintiff,

v.

**CITY OF COUNCIL GROVE, KANSAS WATER DEPARTMENT and its representatives; and Jim Masters in his representative capacity and individual capacity, Defendants.**

No. 97–4039–RDR.

United States District Court, D. Kansas.

Nov. 30, 1999.

Cheryl D. Myers, Michael B. Myers, Myers & Myers, Topeka, KS, for Connie Dunegan, plaintiff.

James S. Pigg, Fisher, Patterson, Sayler & Smith, Topeka, KS, Alan L. Rupe, Husch & Eppenberger, Wichita, KS, for defendants.

### MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This action is brought by the plaintiff pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.;* the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq.;* and various state law claims. Plaintiff is a former employee of the Council Grove Water Department. She brings this action against the City of Council Grove, Kansas and Jim Masters, her supervisor at the Water Department. She contends that she was sexually harassed during her employment at the Water Department and then retaliated against when she complained of the harassment. This matter is presently before the court upon the defendant City's motion for summary judgment and defendant Masters' motion for summary judgment.

Initially, the court apologizes for the delay in deciding these pending motions. Although other matters have occupied some of the court's time, we find it necessary to provide an explanatory note for the delay. The delay is directly related to the approach taken by the plaintiff or, more specifically, by her counsel in this case. Plaintiff's counsel have undertaken the task of trying to allege every conceivable claim that could have arisen from these facts. The court understands the obligation of counsel to represent a client with zealousness, but the means taken by plaintiff's counsel only serves to delay the conclusion of this matter. The opposing parties must discover the details concerning each claim, and this lengthens and burdens the discovery process. Then, due to the dubious nature of many of the claims, the opposing party is then required to file an extensive summary judgment motion. The court is forced to make its way through a maze of claims, arguments and precedent. This process is hindered further by the lack of clarity in the pleadings concerning plaintiff's claims. The pleadings submitted by plaintiff are an example of the "shifting sands" approach. Claims have been asserted, then dropped and then reasserted. At present, the pretrial order is the guide for remaining claims, although the summary judgment motions were filed prior to the filing of the pretrial order.

### CITY'S MOTION FOR SUMMARY JUDGMENT

The City seeks summary judgment on all remaining claims asserted by plaintiff. The City notes that a number of claims were eliminated at the pretrial conference. The court agrees. The final pretrial order shows that a number of claims which had

been asserted in the plaintiff's amended complaint were dropped. The court shall focus only upon the claims that remain in the case.

## TITLE VII AND KAAD DISCRIMINATION AND RETALIATION CLAIMS

The City initially seeks summary judgment on plaintiff's sexual discrimination claims brought under Title VII and the Kansas Act Against Discrimination. The City argues that plaintiff's claims of sexual harassment are neither pervasive nor severe enough to create an objectively hostile working environment. The City also argues that it is not liable for conduct upon which plaintiff bases her hostile work environment claim.

### Sexual harassment

Plaintiff's claims of sexual harassment consist of two incidents, one involving Masters and the other involving a coworker, Richard Swisher. Plaintiff was employed by the Council Grove Water Department in 1981. Masters began working for the Council Grove Water Department in 1975.

The court shall recount the alleged incidents of sexual harassment in the light most favorable to the plaintiff. On September 4, 1995, plaintiff had experienced some problems at the water plant with the chlorine residual levels in the water. She went home with the understanding that the plant's telephone alarm system would notify water plant employees if additional problems arose. Shortly after 6:00 p.m., the alarm system notified Ed Hirt, a coworker, about a problem with the chlorine levels. Hirt contacted plaintiff and asked what steps she had taken during the day to correct the problem. Hirt increased the chlorine and left the plant. At approximately 8:00 p.m., the alarm system again contacted water plant employees with a chlorine level alarm. Masters responded to this alarm. Upon arrival at the plant, Masters also telephoned plaintiff to determine what steps she had taken to correct the problem. Plaintiff volunteered to come to the plant and help with the problem. Plaintiff arrived at the plant at approximately 8:30 p.m. Plaintiff and Masters spent approximately ten minutes in the lab area of the plant analyzing water samples. Plaintiff subsequently exited the lab area and stood outside where it was cooler. It was at this point that Masters put his arms around plaintiff from behind. He squeezed her, grabbed her right breast, and kissed her on both sides of the neck. Plaintiff determined that he was sexually aroused during this encounter. She immediately pushed his arms away without resistance from Masters. There were no words spoken during the incident. Later, they were both outside again on some steps that were adjacent to the lab area. Plaintiff was seated on a higher step and Masters was several steps below. He reached up, grabbed plaintiff's left ankle, and tried to pull her down. She resisted and he quit pulling. Masters subsequently left the plant. Plaintiff stayed until 2:00 a.m. to make sure that the chlorine level problem had been corrected.

On June 10, 1996, plaintiff was working in a crawl space under a city resident's house in order to install a water meter. She was being assisted by Richard Swisher, a seventeen-year-old who had been hired for summer employment. While they sat under the crawl space, Swisher tried twice in a short period of time to kiss her. In both instances, he put his hands and arms on plaintiff and made efforts to kiss her. She quickly rebuffed his advances and he made no further efforts. After the incident, plaintiff and Swisher gathered up their tools and left work at the usual time.

"[I]n order to be actionable under [Title VII], a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). This inquiry eliminates any requirement that a plaintiff demonstrate that the harassment adversely affected his or her work performance or psychological

well being, and focuses the inquiry on whether the harassment discriminatorily alters the terms and conditions of his or her employment. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

The Supreme Court has consistently counseled that the test for whether an environment is "hostile" or "abusive" is not a mathematically precise one, but requires the court to look at all the circumstances and consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787–88, 118 S.Ct. 2275. The Court has emphasized that "no single factor is required." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Of course, the harassment must have occurred because of the employee's sex. *Oncale*, 523 U.S. at 79–80, 118 S.Ct. 998.

The defendant argues that two incidents occurring nine months apart do not, as a matter of law, create an objectively hostile work environment based on pervasiveness. The defendant also argues that the incidents were not sufficiently severe to create an actionable hostile work environment.

■ The court agrees with the defendant that the two incidents here do not constitute an objectively hostile work environment based upon pervasiveness. These two incidents alone are insufficient to establish an objectively hostile work environment based on pervasiveness. *See Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir.) (two incidents in a two-year period insufficient to create abusive work environment), *cert. denied,* —— U.S. ——, 119 S.Ct. 188, 142 L.Ed.2d 153 (1998); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (10th Cir.1997) (five separate incidents over a span of approximately sixteen months not sufficiently pervasive to create abusive work environment); *see also Griffin v. Pinkerton's, Inc.*, 173 F.3d 661, 665 (8th Cir.1999) (five incidents over

a period of approximately one year not sufficiently pervasive to constitute abusive work environment); *Gipson v. KAS Snacktime Co.*, 171 F.3d 574, 579 (8th Cir. 1999) (two incidents in two-month period not sufficiently pervasive to create abusive work environment).

Next, we consider whether the incidents were sufficiently severe. Given that the court has found these incidents not to be sufficiently pervasive to create an abusive work environment, then we shall consider each in isolation to determine if either or both are severe enough to create an abusive work environment.

■ The court is not persuaded that the City is entitled to summary judgment on the incident involving Masters. This incident was sufficiently severe to constitute sexual harassment. The law is well-settled that "a single incident of physically threatening conduct can ... be sufficient to create an abusive environment." *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir.1998) (harassing conduct by two male customers of waitress in restaurant was severe enough to create hostile work environment where men commented on her perfume, grabbed her by the hair and one of them grabbed her breast and placed his mouth on it). The facts concerning the Masters incident, when viewed in the light most favorable to the plaintiff, are sufficiently severe to create a hostile work environment.

■ The court believes, however, that the City is entitled to summary judgment on the other incident involving Swisher. In considering the totality of these circumstances, we are not convinced that the actions of Swisher were severe enough to alter the conditions of the plaintiff's employment and create a hostile work environment. The facts show Swisher, a summer teenage hire, made two efforts to kiss the plaintiff. He was quickly rebuffed and he made no further efforts. Such facts pale in comparison to other factual scenarios where courts have concluded that the

actions of a supervisor or co-worker were insufficient to constitute a hostile work environment. *See Saxton v. American Telephone and Telegraph Co.,* 10 F.3d 526, 534–35 (7th Cir.1993) (placement of hand on plaintiff's leg and kissing her until she pushed away, followed three weeks later by lurching at plaintiff from behind some bushes and unsuccessfully trying to grab her, not severe enough to create hostile environment); *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333, 334–37 (7th Cir.1993) (supervisor repeatedly asking employee for dates, calling her a "dumb blonde," putting his hand on her shoulder, trying to kiss her, and leaving "I love you" signs in her work area not severe enough to create issue of material fact on sexual harassment claim); *Stoeckel v. Environmental Management Systems, Inc.,* 882 F.Supp. 1106, 1114–15 (D.D.C. 1995) (employee's attempts to kiss plaintiff, lewd remarks about her appearance, following plaintiff around the office, unsolicited neckrubs, and hand-holding did not rise to level of severity for abusive work environment); *Ballou v. University of Kansas Medical Center,* 871 F.Supp. 1384, 1390 (D.Kan.1994) (supervisor, who stared at and followed plaintiff, and asked her about her interest in a romantic relationship and whether she would kiss him on her birthday was not severe enough to create hostile work environment). Accordingly, we believe that the City is entitled to summary judgment on this incident.

We next turn to the issue of employer liability. The first incident involved sexual harassment by a supervisor. Prior to decisions by the United States Supreme Court in *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the Tenth Circuit had identified four possible conditions of employer liability for hostile work environment sexual harassment. *See Harrison v. Eddy Potash, Inc.,* 112 F.3d 1437, 1446 (10th Cir.1997), *judgment vacated,* 524 U.S. 947, 118 S.Ct. 2364, 141 L.Ed.2d 732 (1998) (remanding for further consider-

ation of *Faragher*). Although *Faragher* and *Ellerth* did not appear to alter the standards for the first two types of employer liability set forth in *Harrison,* these conditions are not present here and we need not consider them. *Faragher* and *Ellerth* did alter the test for vicarious liability and apparently replaced the third and fourth theories of liability set forth in *Harrison.* For the purposes of the instant motion, the court shall focus on the teachings of *Faragher* and *Ellerth.* Although the City did not discuss *Faragher* and *Ellerth* in its original motion, it did discuss them in its reply brief. In those cases, the Supreme Court established the following rules for these circumstances:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see* Fed. Rule Civ.Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275. The Court further explained that "tangible employment action" includes a "discharge, demotion, or undesirable reassignment." *Faragher,* 524 U.S. at 808, 118 S.Ct. 2275.

Plaintiff has argued that the City cannot take advantage of the affirmative defense set forth in *Ellerth* and *Faragher* because tangible employment actions were taken against her. We must disagree. Initially, we find no merit to plaintiff's suggestion that a constructive discharge falls within

the definition of "discharge" as set forth in *Ellerth.* Moreover, we find no merit to the plaintiff's argument that her own decisions to take a leave of absence or to use her sick leave constitute a "tangible employment action." As properly argued by the City, the Supreme Court in *Faragher* and *Ellerth* was referring to significant changes in employment status. The Court was referring to situations in which the alleged harasser directly fired, demoted or reassigned the victim of harassment and that conduct formed part of the factual basis for the sexual harassment claim. The facts here show no such action by Masters or anyone else in the City.

■ Although the City can assert the affirmative defense set forth in *Faragher* and *Ellerth,* we are not persuaded that the City is entitled to summary judgment on that basis. We find that plaintiff has raised a disputed issue of material fact whether the City took reasonable care to prevent and correct the sexually harassing behavior in this case. Accordingly, we must deny summary judgment to the City on plaintiff's sexual harassment claim under Title VII.

The court shall turn briefly to the question of employer liability concerning the City arising from the incident involving Swisher. Even though we have previously determined that the City is entitled to summary judgment on this particular incident, we want to briefly comment on the issue of employer liability because we believe that the City is entitled to summary judgment on this issue as well.

■ Different standards are applicable to the second incident since the abusive conduct was allegedly undertaken by a co-worker. *See Henderson v. Whirlpool Corp.,* 17 F.Supp.2d 1238, 1244 n. 4. (N.D.Okla.1998). Employers may be liable on a claim of sexual harassment by a co-worker for "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Hirschfeld v. New Mexico Corrections Dept.,* 916 F.2d 572,

577 (10th Cir.1990). The court must make two inquiries in determining the liability of employer for the sexual harassment of a co-worker: (1) "first, into the employer's actual or constructive knowledge of the harassment, and second, into the adequacy of the employer's remedial and preventive responses to any actually or constructively known harassment." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 673 (10th Cir. 1998).

The facts here show that plaintiff immediately brought the incident involving Swisher to the attention of the City. The City was prepared to conduct an investigation of the matter, but Swisher never returned to work after the incident. The City terminated him on June 17, 1996 for improper conduct and failure to return to work.

■ There is little question that the City had knowledge of the incident after it occurred. There is also little question that the City acted reasonably to end the harassment. We can think of no more effective response than termination of the purported harasser. Although plaintiff suggests that the City should have investigated this incident, we see no need to do so since Swisher was fired shortly after it occurred. We find as a matter of law that the City is entitled to summary judgment on this incident for this reason as well as the aforementioned basis.

### Sex Discrimination and Retaliation

The City contends that it is entitled to summary judgment on plaintiff's sex discrimination and retaliation claims based upon a variety of reasons. First, the City argues that a number of these claims are barred by failure to exhaust her administrative remedies. Second, the City asserts that legitimate, nondiscriminatory, non-retaliatory reasons exist for the City's actions.

The following facts are contained in the record concerning plaintiff's failure to exhaust her administrative remedies. On

November 17, 1995, plaintiff filed a complaint with the Kansas Human Rights Commission (KHRC) based upon the September 4, 1995 incident involving Masters and charging the City with a KAAD violation as follows:

> I was singled out for adverse differential treatment compared to similarly-situated male employees in that I was subjected to sexual harassment which created a hostile, intimidating or offensive work environment, in that I was offered no counseling and the Respondent has taken no corrective, remedial action because of my sex, female.

The complaint also criticized the City for allegedly not having a policy on sexual harassment prior to the incident and not providing education or training on sexual harassment generally or for Masters.

On August 2, 1996, plaintiff filed another complaint with the KHRC which focused primarily upon the June 10, 1996 incident involving Swisher, but also raised allegations of retaliation for filing her November 17, 1995 complaint. Plaintiff also alleged that the City had failed to provide reasonable accommodations for an alleged disability within the meaning of the KAAD and ADA. The retaliatory conduct alleged was requiring her "to work in situations where sexual harassment and sexual assaults against me continued." Specifically, she alleged that the City had assigned Swisher to work with her "in confined, solitary and isolated working conditions." The alleged disability was "mental and emotional" for which she allegedly sought accommodation "on or about September and October, 1995," consisting of not having to work in the "proximity" of Masters.

The issues here suffer from the same problems as many of the others in this case. The exact nature of plaintiff's retaliation and discrimination claims is unclear. We have carefully examined the pretrial order and have concluded that the following claims are still being asserted by plaintiff: (1) she was assigned to "extra strenuous and obnoxious" work duties; (2) she was either forced to work under Masters'

direct control or told that she would have to work under his control; (3) she was made to clock in and receive work duties at the City offices; (4) she was assigned to train and work with Swisher installing water meters in dark, confined spaces; (5) she was denied disability leave with pay; (6) she was not given a reasonable accommodation for her mental disability; (7) she was not considered or given an opportunity to apply for the position of billing clerk; (8) she was not given medical treatment and counseling; and (9) she was placed in "false light" and her privacy was invaded. Plaintiff apparently alleges the following discrimination claims in the pretrial order: (1) she was not provided with the same job opportunity as a similarly-situated male employee, Danny Matthews; (2) she was not provided counseling as was a male employee, Masters; and (3) she was not provided medical leave.

▮▮▮▮ Exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under Title VII. *Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Services,* 165 F.3d 1321, 1326 (10th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999); *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 799 (10th Cir.), *cert. denied,* 522 U.S. 935, 118 S.Ct. 342, 139 L.Ed.2d 266 (1997). To exhaust administrative remedies, a Title VII plaintiff generally must present her claims to the EEOC as part of her timely filed EEOC "charge" for which she has received a right-to-sue letter. *Simms,* 165 F.3d at 1326. The purpose of the exhaustion requirement is twofold: to give notice of the alleged violation to the charged party and to give the EEOC an opportunity to conciliate the claim. *Ingels v. Thiokol Corp.,* 42 F.3d 616, 625 (10th Cir.1994).

▮▮▮▮ When a plaintiff seeks judicial relief for incidents not listed in the EEOC charge, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge. A limited exception to the

exhaustion rule for Title VII exists when the unexhausted claim is for discrimination like or reasonably related to the allegations in the EEOC charge. *Simms,* 165 F.3d at 1327. As a general rule, where an alleged retaliatory action occurs after the filing of the EEOC charge, the retaliatory action is deemed reasonably related to the charge. *Seymore,* 111 F.3d at 799. "However, where a retaliatory act occurs prior to the filing of a charge and the employee fails to allege the retaliatory act or a retaliation claim in the subsequent charge, the retaliatory act ordinarily will not reasonably relate to the charge." *Id.*

In examining the retaliation claims, the court finds that most are reasonably related to the charges that were filed by the plaintiff. The court, however, fails to find that the following claims were contained in the charges filed by the plaintiff or are reasonably related to the charges that were filed: (1) she was denied disability leave with pay; and (2) she was placed in "false light" and her privacy was invaded. No mention is made of these claims in plaintiff's charges. In addition, they appear to be outside the scope of the other contentions. The court shall grant summary judgment to the City on these claims.

▆▆ In examining the sex discrimination claims, the court finds that her claims of denial of job opportunity and denial of medical leave are not contained in her charges and are not reasonably related to the claims that are contained in the charges. Accordingly, the court shall also grant summary judgment to the City on these claims based upon plaintiff's failure to exhaust.

Finally, we turn to the City's contentions that it is entitled to summary judgment on the remaining claims because of the lack of evidence of a retaliatory or discriminatory intent. A thorough examination of the facts involving these claims reveals that disputed issues of fact remain that preclude summary judgment.

## ADA and KAAD DISABILITY CLAIMS

Plaintiff contends that she suffered a mental disability as a result of the aforementioned events involving Masters and Swisher. She further contends that the City failed to make a reasonable accommodation for her mental limitations. Specifically, she alleges:

On or about September and October, 1995, plaintiff first requested reasonable accommodation for her disability by telling defendants she could not cope with having to work in the proximity of her supervisor, Jim Masters. Because of defendants' failure to accommodate plaintiff's disability, plaintiff was forced to use her sick leave in order to be off work because of her disability. From on or after September 1995, plaintiff again repeatedly requested and her medical provider repeatedly requested reasonable accommodation for her disability.

The defendant contends that plaintiff has not demonstrated that she is a "qualified individual with a disability" because her inability to work for a particular supervisor does not constitute an inability to perform a class of jobs or a broad range of jobs in various classes as must be shown to qualify for a disability under the ADA. Plaintiff argues that she does have a disability under the ADA and the KAAD because she has been diagnosed as suffering from posttraumatic stress disorder (PTSD).

▆▆ To qualify for relief under the ADA and KAAD for alleged disability discrimination, plaintiff must first establish that she is a disabled person within the meaning of those Acts. *White v. York International Corp.,* 45 F.3d 357, 360 (10th Cir.1995); *Bernard v. Doskocil Companies, Inc.,* 861 F.Supp. 1006, 1013 (D.Kan. 1994); *Padilla v. City of Topeka,* 238 Kan. 218, 708 P.2d 543 (1985). A disability means "a physical or mental impairment that substantially limits one or more of the major life activities of the individual." 42 U.S.C. § 12101(2)(A); see also K.S.A. 44–1002(j)(1). Working is a "major life activi-

ty." *Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). In order to demonstrate that an impairment "substantially limits" the major life activity of working, plaintiff must show a "significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.* (quoting 29 C.F.R. § 1630.2(j)(3)(i)). The inability to work under a certain supervisor because of the stress and anxiety it causes does not constitute a disability under the ADA. *Siemon v. AT & T Corp.,* 117 F.3d 1173, 1176 (10th Cir.1997).

 There is some medical evidence in the record to support plaintiff's contention that she suffers from PTSD. Plaintiff produced several letters from her treating physician indicating that she suffers from PTSD. The letters further indicate that plaintiff was unable to work with Masters. *See, e.g.,* Exh. # 11 of plaintiff's consolidated appendix to response to summary judgment motion, letter of 12/6/95 from Steve E. Shelton, M.D. ("My suggestion would be that we move Connie to a different area where she would not have her former boss as a supervisor and would not have contact with him.").

A psychiatric impairment qualifies as a disability under the ADA only if the impairment substantially limits the plaintiff's major life activities or is regarded by the employer as doing so. As stated previously, for an impairment to substantially limit the major life activity of working, the plaintiff must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The only medical evidence offered by plaintiff with respect to her impairment restricting her work comes from Dr. Shelton. He indicated only that plaintiff had trouble working around Masters, not men in general. Plaintiff has demonstrated only that she could not perform under the supervision of Masters. The inability to perform only these jobs is too narrow to constitute a "class of jobs." Accordingly, we find that the City is entitled to summary judgment on this claim.

§ 1983 CLAIM

The claims asserted by plaintiff under § 1983 are an enigma, wrapped in a mystery, tied to a riddle. The court has difficulty discerning the nature of these claims by reading plaintiff's amended verified complaint or the pretrial order. In the instant motion, the City contends that plaintiff has set forth two claims and indicated that it is entitled to summary judgment on both of them. Plaintiff, in response, has avoided discussion on one of the claims and stated that she has alleged other claims in her pleadings.

The court has carefully reviewed the pretrial order. The court is persuaded that a liberal interpretation of this document reveals that plaintiff has alleged claims of (1) sexual harassment based upon equal protection, and (2) retaliation based upon the First Amendment.

The City has argued at the outset that plaintiff has not made a claim of sexual harassment under § 1983. We disagree. The court finds that the allegations contained in the pretrial order are sufficient to assert this claim. Nevertheless, we again note that plaintiff's allegations in the pretrial order are a monument to vague and confusing pleadings. We would hope that plaintiff's counsel in the future would do a substantially better job of drafting their client's contentions.

The City has next argued that it is entitled to summary judgment on any § 1983 claim based upon sexual harassment because the undisputed facts fail to support such a claim. Again, the court disagrees. The court believes that sufficient evidence exists to avoid summary judgment on this claim.

The court next turns to plaintiff's other § 1983 claim. The City contends that

plaintiff's § 1983 claim based upon the First Amendment must fail because she was not speaking on a matter of public concern. Finally, the City contends that plaintiff's § 1983 claim must fail because she has not demonstrated a policy or custom sufficient for municipal liability.

■ A two-part test must be applied in evaluating claims of public employees alleging that their employers have retaliated against them for exercising their First Amendment rights. *Connick v. Myers*, 461 U.S. 138, 142–54, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). First, one must determine whether the plaintiff's statements can be "fairly characterized as constituting speech on a matter of public concern." *Connick*, 461 U.S. at 146, 103 S.Ct. 1684. Second, courts must determine whether the " 'interests of the [employee], as a citizen, in commenting upon matters of public concern' " outweigh the " 'interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* at 142, 103 S.Ct. 1684 (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731).

We are confronted here with the threshold question of whether plaintiff's speech involved a matter of public concern. The standards to be applied to this issue were succinctly set forth in *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir.1996), *cert. denied*, 522 U.S. 858, 118 S.Ct. 157, 139 L.Ed.2d 102 (1997) as follows:

> In deciding whether a particular statement involves a matter of public concern, the fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen. *See Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. Speech that pertains to a public agency's "discharging its governmental responsibilities" ordinarily will be regarded as speech on a matter of public concern. *See id.*, 461 U.S. at 148, 103 S.Ct. at 1690–91. In contrast, speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern. *See id.* at 147–49, 103 S.Ct. at 1690–91; *Woodward [v. City of Worland]*, 977 F.2d [1392] at 1403 [ (10th Cir.1992), *cert. denied*, 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993) ]. In distinguishing between these two categories of speech, courts must consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690–91. "The court will also consider the motive of the speaker to learn if the speech was calculated to redress personal grievances [and therefore spoken as an employee] or to address a broader public purpose [and therefore spoken as a citizen]." *Workman [v. Jordan]*, 32 F.3d [475] at 483 [(10th Cir.1994), *cert. denied*, 514 U.S. 1015, 115 S.Ct. 1357, 131 L.Ed.2d 215 (1995) ].

■ In examining the speech involved here, we are in agreement with the City that plaintiff did not speak on a matter of public concern. Plaintiff made her complaints as an employee rather than a citizen. She alleged only that she had been personally subjected to sexual harassment and retaliation. Her speech focused on her own employment and she made no allegations concerning harassment involving others. Under these circumstances, we find that her statements did not involve a matter of public concern. *See David*, 101 F.3d at 1356 (police officer's administrative complaints and letter to city attorney alleging sexual harassment by fellow officers did not address matters of public concern); *Woodward*, 977 F.2d at 1403 (employees of county sheriff's department alleged that their supervisors and co-employees had retaliated against them after they filed formal sexual harassment complaints against a police officer addressed personal matters, not matters of public concern).

In sum, we find that the City is entitled to summary judgment on plaintiff's § 1983 claim based upon the First Amendment.

The court reaches the conclusion after finding that plaintiff did not speak out on a matter of public concern.

STATE LAW CLAIMS

The City raises some arguments directed at all of the plaintiff's state law claims and some arguments concerning each of the claims. The City initially contends that plaintiff failed to comply with the requirements of K.S.A. 12–105b(d). The City also argues that plaintiff's remaining state law claims—intentional infliction of emotional distress, negligence in hiring and retaining Masters, and invasion of privacy—are either not factually supportable or legally viable or both.

The court must initially turn to the defendant's arguments concerning the notice requirements of K.S.A. 12–105b(d). This statute provides, in relevant part, as follows:

> Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested.... Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of the period. No person may initiate an action against a municipality unless the claim has been denied in whole or in part.

 The purpose of the notice requirement is to sufficiently advise the municipality of the time and place of the injury and give the city an opportunity to ascertain the character and extent of the injury sustained. *Bradford v. Mahan,* 219 Kan. 450, 548 P.2d 1223, 1230 (1976); *Tucking v. Board of Commissioners of Jefferson County,* 14 Kan.App.2d 442, 796 P.2d 1055, 1059 (1990). The filing of a proper notice under K.S.A. 12–105b(d) is a condition precedent to the filing of an action against a municipality. *Miller v. Brungardt,* 916 F.Supp. 1096, 1098 (D.Kan. 1996). Substantial compliance is required under K.S.A. 12–105b(d). *See* K.S.A 12–105b(d) (in filing of notice of claim, substantial compliance with § 12–105b(d) constitutes valid filing of claim). "Substantial compliance" means compliance in respect to the essential matters necessary to insure every reasonable objective of the statute. *City of Lenexa v. City of Olathe,* 233 Kan. 159, 660 P.2d 1368 (1983). Substantial compliance under K.S.A. 12–105b(d) has been interpreted to require plaintiff to "attempt to supply the information required by each of the five elements of the statute if relevant to the facts of the case; omission of one or more relevant elements makes the notice fatally insufficient." *Tucking,* 796 P.2d at 1056; *see also Wiggins v. Housing Auth. of Kansas City, Kan.,* 19 Kan.App.2d 610, 613, 873 P.2d 1377, 1380 (1994).

 The defendant contends that the notice filed by plaintiff here was insufficient under K.S.A. 12–105b(d) because (1) it was not submitted prior to the filing of her federal complaint; (2) it was not submitted to the appropriate person; and (3) the content of the notice was inadequate.

On February 19, 1997, at approximately 5:34 p.m., plaintiff faxed a one-page docu-

ment to the Council Grove city clerk's office. The document was entitled "NOTICE PURSUANT TO K.S.A. 12–105(b)" and was signed by plaintiff's attorneys. The document was directed to "ACTING CITY CLERK OF COUNCIL GROVE, DANNY MATTHEWS." An unsigned copy of plaintiff's verified federal complaint was attached to the document and "incorporated by reference." The original of this document was mailed to the Clerk of the Court of Morris County. It was received on February 24, 1997, and was subsequently delivered to Danny Mathews, who is the "billing clerk," not the "city clerk," for the City of Council Grove.

On February 19, 1997, plaintiff filed her complaint in this action in this court. The complaint was file stamped on that date at 6:33 p.m.

The language of the statute concerning the requirement of prior notice is quite clear. A claim must be filed with the municipality prior to the commencement of litigation and litigation cannot be begun until the claim has been denied or 120 days have passed, whichever occurs first. The purpose of the notice and delay requirements is to insure that the municipality has ample time to investigate the claim before being sued on that claim. Filing the notice on the day that litigation is begun does not constitute prior notice. Such action by the plaintiff does not allow any pre-investigation period by the City. Approving the procedure used by the plaintiff would eliminate the notice requirement from the statute. We cannot find the actions of the plaintiff constitute compliance with K.S.A. 12–105b(d). Accordingly, the court agrees with the defendant that the failure by plaintiff to file her notice pursuant to K.S.A. 12–105b(d) with the City prior to the filing of her federal lawsuit requires dismissal of her state law claims.

Plaintiff has stated three reasons why her state law claims should not be dismissed based upon the notice requirements of K.S.A. 12–105b(d). First, she argues that the filing of her administrative charges of discrimination with the KHRC and EEOC is sufficient to comply with the requirements of K.S.A. 12–105b(d). Plaintiff has failed to provide any authority for this argument and we have not discovered any either. The purpose of K.S.A. 12–105b(d) is to provide notice to the City of any *tort claims* that a claimant desires to assert. The administrative claims filed by plaintiff as required by the federal and state statutes concerning these causes of action provided no notice to the City on the claims that plaintiff now asserts as state law claims. Second, plaintiff contends that the answer filed by the City in this case, which occurred over 120 days after the filing of the K.S.A. 12–105b(d) notice, constitutes denial of her K.S.A. 12–105b(d) notice. This argument is meritless. As noted previously, the purpose of the notice is to allow a municipality the opportunity to investigate the claims and approve or deny the claim *prior* to having to litigate them. The reading suggested by the plaintiff would make the notice requirement meaningless. Finally, plaintiff suggests that the City has acquiesced to these claims by not having filed a motion to dismiss. This argument is also without merit. Plaintiff again provides no support for such an argument and we also find none. These arguments are appropriately raised at the summary judgment level since they involve the subject matter jurisdiction of the court.

With this decision, the court need not consider the other arguments raised by the City concerning the plaintiff's state law claims. The court shall dismiss all of plaintiff's state law claims against the City.

## MASTERS' MOTION FOR SUMMARY JUDGMENT

Defendant Masters contends that he is entitled to summary judgment on the claims that remain pending against him. He asserts that there are only two remaining claims—claims asserted by plaintiff under 42 U.S.C. § 1983 and a state law claim for intentional infliction of emotional distress.

Again, the court notes our frustration with the claims asserted by the plaintiff. In the pretrial order, the following statement is contained in plaintiff's allegations: "The only claim presently asserted against defendant Masters is a § 1983 claim for intentional infliction of emotional distress." Of course, if this were the case, then the court would be forced to dismiss this claim since liability under § 1983 cannot be based on a violation of state law alone. *See Jones v. City & County of Denver,* 854 F.2d 1206, 1209 (10th Cir.1988). However, after a review of the proceedings of the pretrial conference, the court believes that plaintiff continues to assert claims under § 1983 against Masters as well as a claim for intentional infliction of emotional. distress. The court is uncertain why plaintiff's counsel would allow the pretrial order to be signed with the aforementioned statement contained in it, but we are certain that this is not what plaintiff intended. Defendant Masters recognizes that fact as well in his motion for summary judgment. Accordingly, the court shall address the § 1983 claims against Masters as well as the claim for intentional infliction of emotional distress.

As we stated previously, we believe that plaintiff's § 1983 claims consist of a free speech claim under the First Amendment and an equal protection claim under the Fourteenth Amendment. For the reasons previously stated, we find that defendant Masters is entitled to summary judgment on plaintiff's First Amendment claim. Again, we note that plaintiff's First Amendment claim must fail because she did not speak on a matter of public concern.

■ Next, we turn to plaintiff's Fourteenth Amendment claim based on sexual harassment. We do not find that Masters is entitled to summary judgment on this claim. The court finds that genuine issues of material fact remain that preclude the entry of summary judgment on this claim.

Masters has also asserted that he is entitled to qualified immunity on this claim. He has argued that the law on this claim is not so clearly established that he should have been aware that such conduct violated plaintiff's constitutional rights.

■ Government officials are entitled to qualified immunity when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To analyze a claim of qualified immunity, we use a two-part framework: "first we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his or] her conduct violated the right." *Garramone v. Romo,* 94 F.3d 1446, 1449 (10th Cir.1996).

■ The law is well-settled that public officials can be held liable for sexual harassment under the Equal Protection Clause in the employment setting. *See Starrett v. Wadley,* 876 F.2d 808, 814 (10th Cir.1989) *Woodward v. City of Worland,* 977 F.2d 1392, 1397 (10th Cir.1992) *cert. denied,* 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993); *Noland v. McAdoo,* 39 F.3d 269, 271 (10th Cir.1994). We believe that these cases provided sufficient notice to Masters that he could be held liable for sexual harassment under § 1983 for the type of conduct he allegedly engaged in here. Accordingly, the court shall not grant summary judgment on this basis either.

Finally, we must examine plaintiff's claim of intentional infliction of emotional distress or, as it is sometimes referred to, the tort of outrage, against Masters. Masters argues that his conduct as alleged by plaintiff does not rise to the level necessary for a claim of outrage.

■ To establish a prima facie case of outrage, plaintiff must show: (1) defendant's conduct was intentional or in reckless disregard of the plaintiff; (2) defendant's conduct was extreme and outra-

geous; (3) there is a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress is extreme and severe. *Bolden v. PRC Inc.*, 43 F.3d 545, 553 (10th Cir.1994), *cert. denied*, 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995).

 Here, the focus is upon the second requirement. Kansas has established a very high standard for the common law tort of intentional infliction of emotional distress. *Holdren v. General Motors Corp.*, 31 F.Supp.2d 1279, 1282 (D.Kan.1998). "Kansas courts have been reluctant to extend the outrage cause of action to discrimination and harassment claims." *Bolden*, 43 F.3d at 554. Conduct to be a sufficient basis for an action to recover for emotional distress must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society. This decidedly difficult threshold has been maintained so that worthy claims may be separated from those "based on trivialities or hyperbole." *Rupp v. Purolator Courier Corp.*, 790 F.Supp. 1069, 1073 (D.Kan.1992), *aff'd*, 45 F.3d 440 (10th Cir.1994). As such, liability "does not arise from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities. Members of the public are necessarily expected and required to be hardened to a certain amount of rough language and to occasional acts and words that are definitely inconsiderate and unkind." *Anspach v. Tomkins Industries, Inc.*, 817 F.Supp. 1499, 1506 (D.Kan.1993), *aff'd*, 51 F.3d 285 (10th Cir.1995).

 The court has carefully examined the factual basis for this claim, and we do not find that it rises to the necessary level. Claims of outrage in Kansas are reserved for the most egregious circumstances. Although the conduct may be sufficient to rise to the level necessary to sustain a Title VII claim for sexual harassment, we do not find that Masters' conduct can reasonably be regarded as so extreme and outrageous that it goes beyond the bounds of decency and is utterly intolerable in a

civilized society. *See Glover v. Heart of America Management Co.*, 38 F.Supp.2d 881, 888 (D.Kan.1999) (existence of hostile work environment under Title VII does not necessarily require a finding of outrageous conduct). Accordingly, the court shall grant summary judgment to Masters on this claim.

**IT IS THEREFORE ORDERED** that defendant City of Council Grove's motion for summary judgment (Doc. # 115) be hereby granted in part and denied in part as set forth in the foregoing opinion.

**IT IS FURTHER ORDERED** that defendant Jim Masters' motion for summary judgment (Doc. # 109) be hereby granted in part and denied in part as set forth in the foregoing opinion.

**IT IS SO ORDERED**